**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bobbi Jo Farley, | No. CV-14-08150-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, | |
| Defendant. | |

Plaintiff Bobbi Jo Farley seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.   Background.**

Plaintiff is a 38-year-old female with a tenth grade education. She previously worked as a nursing assistant, hotel porter, stocker, waitress, cashier, and store manager. On May 8 and June 3, 2008, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning December 14, 2007. A hearing was held, the ALJ issued an unfavorable decision, but the Appeals Council remanded the matter to the ALJ for consideration of a few additional matters. A.R. 161-

63. On January 16, 2013, Plaintiff appeared with her attorney and testified at a video hearing before the ALJ. A vocational expert also testified. On March 13, 2013, the ALJ issued a decision that Plaintiff was disabled from September 1, 2008 through October 1, 2009 (the "Closed Period") and not disabled outside of the Closed Period within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.

**II.    Legal Standard.**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

**III.   The ALJ's Five-Step Evaluation Process.**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment.

§ 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

The ALJ analyzed two different avenues of disability: (1) disability during the Closed Period and (2) disability outside of the Closed Period (prior to September 1, 2008 and beginning October 2, 2009). For the Closed Period, at step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2009, and that she had not engaged in substantial gainful activity during the Closed Period. At step two, the ALJ found that Plaintiff has the following severe impairments: Chiari malformation[1] with congenital syringomyelia, status post brain surgery, right upper extremity cellulitis and furunculosis of the right arm, a mood disorder, and a personality disorder. A.R. 20. At step three, the ALJ determined that during the Closed Period Plaintiff did have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. A.R. 21. Consequently, the ALJ found that Plaintiff was under a disability during the Closed Period given the severity of her Chiari malformation and resulting symptoms. A.R. 22.

---

[1] "Chiari malformations are structural defects in the cerebellum" and may cause symptoms such as muscle weakness, numbness, and headaches. *Chiari Malformation*, WebMD, http://www.webmd.com/brain/chiari-malformation-symptoms-types-treatment (last visited April 24, 2015).

For Plaintiff's claim of disability outside of the Closed Period, the ALJ noted that Plaintiff's "impairments have remained the same throughout the period under adjudication." *Id.* At step three, the ALJ determined that Plaintiff was not disabled prior to the Closed Period, that "medical improvement occurred as of October 2, 2009," that Plaintiff's disability ended, and that Plaintiff therefore does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

> light work with restrictions . . . Occasionally, the claimant can lift 20 pounds and 10 pounds with the right hand used in conjunction with the left hand. The claimant requires a sit/stand option and can occasionally crouch and squat, but never crawl, climb, or kneel. In addition, the claimant is limited to unskilled work.

A.R. 24. The ALJ further found that Plaintiff was unable to perform her past relevant work after October 2, 2009. A.R. 27. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

**IV.   Analysis.**

Plaintiff argues the ALJ's decision is defective for three reasons: (1) the ALJ's decision is not supported by substantial evidence, (2) the ALJ failed to account for the effects of Plaintiff's obesity, and (3) the ALJ erroneously relied on the opinion of an orthopedic physician to testify regarding Plaintiff's neurological impairments. The Court will address each argument below.

**A.   The ALJ's Decision is Supported by Substantial Evidence.**

In her first claim of error, Plaintiff argues that the ALJ should have found her disabled because she demonstrated "complete destruction of her elbow" before and after the Closed Period. Plaintiff asserts that after her surgery in 2009, an MRI demonstrated

"syrinx formation at the T4 and T5 and at C3 and other levels." Doc. 12 at 9. She also argues that she demonstrated she had no use of her upper right extremity and substantial difficulty using her upper left extremity. The Court disagrees.

Plaintiff underwent a craniotomy to correct her Chairi malformation on August 4, 2009. A.R. 598. After her surgery, Plaintiff visited Dr. Nimfa Aguila on October 29, 2009. A.R. 638-41. During the visit, Plaintiff complained of "right arm weakness and swelling." A.R. 638. On examination, Dr. Aguila found Plaintiff had good peripheral pulses in her extremities, no edema, and swelling in the right arm. A.R. 639. She also found Plaintiff had full strength in all muscle groups and was able to perform a finger to nose exercise without difficulty. She noted "[f]inger tapping and rapid alternating movements were normal" and Plaintiff exhibited "good arm swing." *Id.* Dr. Aguila diagnosed Plaintiff with right arm lymphedema (swelling) and right median and ulnar neuropathies (numbness and tingling in fingers). *Id.* Dr. Aguila recommended occupational therapy and a follow-up visit.

In April 2010, an MRI of Plaintiff's left elbow revealed a small osteophyte of the ulnar nerve, but otherwise normal findings. A.R. 718. In January 2011, an examination of Plaintiff's spine evidenced "subtle syrinx formation within the spinal cord at the T4 and T5 levels," but otherwise unremarkable findings. A.R. 738.

This evidence indicates Plaintiff's condition improved after her surgery. Plaintiff overstates the significance of the evidence, claiming that it conclusively demonstrates Plaintiff's disability. Rather, the records indicate that although she still experienced symptoms of Chiari malformation, her condition was improving over time. The ALJ's interpretation of the records is supported by substantial evidence.

The only evidence Plaintiff cites to support her argument is an April 2010 "Medical Source Statement" provided by treating source Dr. Michael Seiff. A.R. 647-54. Dr. Seiff noted Plaintiff's headaches "are essentially resolved" and that her "[e]lectrical cramping pains have not recurred." A.R. 647. Dr. Seiff noted that emotional factors, such as depression and anxiety, contribute to Plaintiff's symptoms. A.R. 649. He found

that Plaintiff could stand or walk continuously for an hour, could sit for no more than four hours in an eight hour workday, and that she could not carry more than five pounds. A.R. 650-51. The Medical Source Statement also noted Plaintiff could never reach, handle, or finger anything with her right hand, but could occasionally reach and frequently handle and finger with her left hand. A.R. 652. Dr. Seiff ultimately found that Plaintiff would miss more than three days of work per month. A.R. 653. Plaintiff asserts this opinion should have been given controlling weight.

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043). An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

The ALJ gave "very little weight" to Dr. Seiff's opinion because it was based on Plaintiff's self-reported symptoms and inconsistent with the medical evidence. A.R. 25. Indeed, Dr. Seiff noted that he and Plaintiff filled out the statement together. A.R. 647. The statement was a simple check form that contained no supporting clinical evidence or

findings. In noting its inconsistency with other medical evidence, the ALJ cited objective medical evidence in the record, including the MRI of Plaintiff's left elbow (A.R. 718), Plaintiff's spine examination (A.R. 738), and Dr. Aguila's findings, none of which Plaintiff dispute. These records indicate improvement over time and do not support a conclusion that Plaintiff cannot ever use her right arm, and, contrary to Plaintiff's argument, actually support a conclusion that Plaintiff can use her left arm without much difficulty. In addition, Dr. Seiff's conclusion that Plaintiff will miss three days of work per month is devoid of any support or explanation. Therefore, the ALJ properly discounted the testimony with specific reasons supported by substantial evidence. *See Lester*, 81 F.3d at 830-31.[2]

### B. The ALJ's Failure to Evaluate Plaintiff's Obesity is Harmless.

Plaintiff also argues the ALJ erred by failing to account for the effects of her obesity as directed by the Appeals Council. The Appeals Council's remand order instructed the ALJ to consider Plaintiff's obesity and to further consider Plaintiff's maximum RFC in light of her obesity. A.R. 162. "According to Social Security Rules, in evaluating obesity to determine a claimant's RFC, the ALJ's assessment 'must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (quoting SSR 02-01p (2002)). It appears the ALJ did not provide an assessment of Plaintiff's obesity in the decision. Nonetheless, the error identified by Plaintiff is harmless.

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains

---

[2] In her reply brief, which was untimely, Plaintiff argues for the first time that the ALJ erred by failing to consider the medical records submitted by Dr. Daniel Frank. A.R. 501-02. This claim of error is not properly before the Court. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Even if it were, however, the opinion was rendered during the Closed Period in which the ALJ found Plaintiff disabled, as well as prior to Plaintiff's corrective surgery. It is therefore not probative as to Plaintiff's condition post-surgery.

- 7 -

1  substantial evidence supporting the ALJ's decision and the error does not affect the
2  ultimate nondisability determination.  *Id.*  The claimant usually bears the burden of
3  showing that an error is harmful.  *Id.* at 1111.

4  Plaintiff has failed to meet her burden of demonstrating that her obesity would
5  have affected the ALJ's ultimate disability determination.  Plaintiff points out the error in
6  her opening brief, but provides no analysis or explanation as to how her obesity would
7  have affected her functional limitations.  There are no citations to any medical evidence
8  in the record, and nowhere does Plaintiff explain how her obesity affects her daily living.
9  In fact, Dr. Eric Schmitter, when testifying at the hearing, stated that Plaintiff is
10 "morbidly obese," but noted that the record was devoid of "good objective findings"
11 related to how obesity affects Plaintiff's condition.  A.R. 43.  Moreover, at none of the
12 three hearings in this case did Plaintiff's attorney question Plaintiff, the vocational expert,
13 or Dr. Schmitter about Plaintiff's obesity and whether it would affect her functional
14 capacity.  *See* A.R. 35-59 (January 16, 2013 hearing); A.R. 60-86 (June 9, 2010
15 supplemental hearing); A.R. 87-137 (April 29, 2010 hearing).  "[T]he medical record is
16 silent as to whether and how [Plaintiff's] obesity might have exacerbated her condition."
17 *Burch*, 400 F.3d at 683.

18 In addition, Plaintiff challenges none of the substantial evidence that supports the
19 ALJ's ultimate decision.  The ALJ found Plaintiff capable of light work with additional
20 restrictions, which were presumably based on Plaintiff's obesity.  A.R. 27 (detailing the
21 ALJ's decision not to find Plaintiff capable of the full range of light work, which would
22 result in a finding of "not disabled," but instead imposing several restrictions).  The RFC
23 was based on objective medical evidence in the record along with Plaintiff's own
24 statements at the hearing, which the ALJ found only partially credible.  Plaintiff does not
25 dispute the ALJ's credibility assessment.  The Court finds the ALJ's error harmless.

### C. The ALJ Did Not Err in Relying on the Opinion of Dr. Schmitter.

Plaintiff also argues that the ALJ erred by relying on Dr. Schmitter, an orthopedist, to testify as to Plaintiff's neurological impairments. Plaintiff argues that a neurologist should have been consulted instead, and that the "record is devoid of any other evidence to support the decision to award plaintiff only a one year closed period." Doc. 12 at 11.

At the January 15, 2013 hearing, Dr. Schmitter testified that Plaintiff has "no neurologic issues" that would require sitting or standing limitations. A.R. 43. When questioned about Plaintiff's syringomyelia with respect to Listing 11.19B, Dr. Schmitter stated that "this is not really orthopedics, this is neurosurgical," and acknowledged that he is not an expert in neurology. A.R. 44. He also stated that he was familiar with decompression surgeries and was able to describe Plaintiff's condition. A.R. 40-41, 47.

The Court is not convinced that the ALJ relied on the testimony for any of Plaintiff's conditions outside the Closed Period. The ALJ gave great weight to Dr. Schmitter's testimony in finding Plaintiff disabled "for the period of September 1, 2008 through October 1, 2009." A.R. 22. But the ALJ appears to have relied on Dr. Schmitter's testimony only as it relates to Plaintiff's "neuropathic degeneration of the right elbow" and an "abnormality in formation of the cervical cord in her neck," for which the ALJ awarded benefits. *Id.* Nowhere in the analysis of whether Plaintiff was disabled after the Closed Period does the ALJ refer to Dr. Schmitter's testimony. Instead, the ALJ relies on the objective medical evidence that demonstrated improvement in Plaintiff's condition post-surgery.

Plaintiff also seems to argue that the ALJ relied on Dr. Schmitter's testimony for a finding that Plaintiff did not meet Listing 11.19B. But Plaintiff points to no evidence that the listing was otherwise satisfied for the time period in dispute – evidence of "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.F.R. Pt. 404, Subpt. P., App. 1, 11.04B, 11.19B. Therefore, even if the ALJ relied on Dr. Schmitter's testimony improperly, Plaintiff fails to show that Listing

1  11.19B would have applied outside the closed period.  *See Molina*, 674 F.3d at 1111.
2  **IT IS ORDERED** that the final decision of the Commissioner of Social Security
3  is **affirmed**.  The Clerk shall enter judgment accordingly and **terminate** this case.
4  Dated this 27th day of April, 2015.

David G. Campbell
United States District Judge